IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

)
SHERRIE WILLIAMS,             )
     Plaintiff,              )
                           )
     v.                    )     Civil No. 3:13cv173 (HEH)
                           )
CAROLYN W. COLVIN,        )
Acting Commissioner of Social Security,  )
     Defendant.          )
_____)

## REPORT AND RECOMMENDATION

Sherrie Williams ("Plaintiff") is fifty years old and previously worked as a nursing assistant, cashier and deli worker. She filed this action in March 2013, seeking judicial review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) of the final decision of Defendant Commissioner denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") stemming from impairments of diabetes, diabetic neuropathy, hypertension, arthralgias and obesity. The Commissioner's decision was based on a finding by an Administrative Law Judge ("ALJ") that Plaintiff was not disabled as defined by the Social Security Act (the "Act") and applicable regulations. This matter is before the Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on Plaintiff's Motion for Summary Judgment (ECF No. 14), Plaintiff's Motion to Remand (ECF No. 15) and Defendant's Motion for Summary Judgment (ECF No. 17).

Plaintiff challenges the ALJ's denial of benefits, arguing that the ALJ erred in evaluating Plaintiff's credibility and her Residual Functional Capacity ("RFC"). (Mem. of Point and Authorities in Supp. of Pl.'s Mot. for Summ. J. ("Pl.'s Mem.") (ECF No. 16) at 17, 22.) Plaintiff

also argues that the ALJ improperly discounted the opinion of Plaintiff's treating family nurse practitioner. (Pl.'s Mem. at 26.) Defendant contends that substantial evidence supports the ALJ's determination of Plaintiff's credibility and RFC. (Def.'s Mem. at 16, 20.) Defendant further contends that the ALJ properly discounted the opinion of Plaintiff's treating family nurse practitioner. (Def.'s Mem. at 26.)

For the reasons discussed below, it is the Court's recommendation that Plaintiff's Motion for Summary Judgment (ECF No. 14) be DENIED, that Plaintiff's Motion to Remand (ECF No. 15) be DENIED, that Defendant's Motion for Summary Judgment (ECF No. 17) be GRANTED and that the final decision of the Commissioner be AFFIRMED.

## I. Background

Because Plaintiff challenges whether the ALJ erred in assigning Plaintiff's treating family nurse practitioner's opinion less than controlling weight and whether the ALJ properly determined Plaintiff's credibility and RFC, Plaintiff's educational and work history, medical history, hearing testimony, Vocational Expert testimony and non-treating state agency physician's opinions are summarized below.

### A. Plaintiff's Education and Work History

Plaintiff graduated from high school and completed more than three years of college. (R. at 225, 330.) Plaintiff also worked as a certified nurse assistant, but she did not complete her certification. (R. at 225, 331.) Plaintiff has worked in the past as a cashier, a deli worker and a nursing assistant from 2003 until 2010. (R. at 235, 331, 337.) Plaintiff has not worked since January 25, 2010. (R. at 198.)

B. Plaintiff's Medical History

Plaintiff is 5'6" in height, and her weight has fluctuated between 279 pounds and 330 pounds from the alleged onset date through the ALJ's decision. (R. at 330, 424, 426, 437, 448, 452, 454, 475, 486, 488, 491, 501, 504, 534.)

On January 26, 2010, Dr. John Ayres II, M.D., of West End Orthopedic Clinic, completed a "Work Restriction Form" for Plaintiff. (R. at 472.) On this form, Dr. Ayres opined that Plaintiff was "unable to work" from January 25, 2010, to February 4, 2010. (R. at 472.) During various follow-up examinations, West End Orthopedic Clinic filled out additional work restriction forms indicating that Plaintiff would be unable to work on numerous occasions from January 25, 2010, through July 30, 2010. (R. at 447, 456, 461, 463, 465-66, 468-70, 472.)

On February 3, 2010, Plaintiff complained to Dr. Ayres of discomfort in her back that radiated into her right leg and of discomfort in her neck that radiated to her right arm. (R. at 471.) Plaintiff's x-rays indicated diffuse degenerative disease in her cervical spine. (R. at 471.) An MRI of Plaintiff's lumbar spine from February 15, 2010, was negative. (R. at 421.) An MRI of Plaintiff's cervical spine indicated a left lateral disc protrusion at C5-C6 that slightly deformed the left anterolateral aspect of the spinal cord and narrowed the left invertebral foramen. (R. at 420.) The examining radiologist indicated that despite Plaintiff's symptoms, the MRIs did not show findings of a right cervical disc protrusion or significant invertebral foraminal narrowing on the right. (R. at 420.)

On February 19, 2010, Plaintiff returned to Dr. Ayres, who prescribed Voltaren and Lortab and referred Plaintiff to physical therapy. (R. at 467.) On March 26, 2010, Plaintiff informed Dr. Ayres that physical therapy helped with both her neck and back discomfort. (R. at

3

464.) Dr. Ayres continued Plaintiff in a physical therapy program and diagnosed her with

cervical disc disease and lumbar disc disease. (R. at 464.) During a follow-up on April 14,

2010, Dr. Ayres indicated that Plaintiff's lower back discomfort was improving, but that the

discomfort in her right thoracic spine was not. (R. at 462.) Dr. Ayres prescribed Tramadol to

Plaintiff and continued her in a physical therapy program. (R. at 462.)

On May 12, 2010, Plaintiff returned to Dr. Ayres and complained of pain in her thoracic

spine that radiated down her right arm. (R. at 460.) A cervical MRI showed disc disease, but Dr.

Ayres indicated that this showing did not correspond correctly with Plaintiff's alleged radicular

symptoms on her right side. (R. at 460.) Dr. Ayres, therefore, referred Plaintiff to another

physician at West End Orthopedic Clinic, Dr. Joseph S. Kim, M.D., for further evaluation. (R. at

460.)

On May 25, 2010, Dr. Kim examined Plaintiff for complaints of radicular right arm pain.

(R. at 454.) Plaintiff's gait was stable and a Spurling's test was negative.[1] (R. at 454.)

Specifically, Dr. Kim noted that the Spurling's test was able to recreate Plaintiff's periscapular

pain but unable to recreate her radicular arm pain. (R. at 454.) Plaintiff's motor, sensory and

reflex examinations were non-focal. (R. at 454.) Further, Dr. Kim indicated that symptoms in

Plaintiff's right arm did not correlate with the left-sided diagnostic findings on her cervical MRI.

(R. at 454-55.) Plaintiff did not have left-sided arm pain, although the MRI showed lateral disc

herniation at C5-C6 on her left side. (R. at 454.) Dr. Kim prescribed Vicodin and recommended

an epidural steroid injection at C6 on Plaintiff's right side. (R. at 455.)

---

[1]     A Spurling's Test is a test in which "the examiner presses down on the top of the head
while the patient rotates the head laterally and into hypertension; pain radiating into the upper
limb ipsilateral to a rotation position of the head indicates radiculopathy." DORLAND'S
ILLUSTRATED MEDICAL DICTIONARY 1900 (32d ed. 2012).

On June 7, 2010, Plaintiff went to Charlotte Primary Care for a diabetes evaluation, and Joseph D. Davis, F.N.P. examined her. (R. at 426.) Before the alleged onset date of January 25, 2010, Plaintiff had received treatment from Mr. Davis and Charlotte Primary Care for various impairments, including hypertension, diabetes mellitus type II and obesity. (R. at 431.) During the course of these earlier treatments, Plaintiff had admitted to consuming a bag of potato chips and a two-liter bottle of soda daily. (R. at 431.) During her June 7, 2010 examination, Plaintiff's HbA1c was 9.9. (R. at 426.) At that time, Mr. Davis added Meformin XR to Plaintiff's diabetic medication regimen. (R. at 426.)

On June 21, 2010, Dr. Daniel Martin, M.D. of West End Orthopedic administered a right C-6 epidural steroid injection to Plaintiff. (R. at 450-51.) On July 8, 2010, Plaintiff informed Dr. Kim that this injection had given her no relief. (R. at 445.) At that time, Plaintiff's physical examination findings remained unchanged, and her motor, sensory and reflex exams were non-focal. (R. at 445.) Dr. Kim suggested further physical therapy for treatment, but Plaintiff declined this treatment. (R. at 445.) Dr. Kim agreed to send Plaintiff to pain management and prescribed her Vicodin and Ultram. (R. at 445.)

On July 27, 2010, Plaintiff attended a follow-up treatment with Dr. Martin. (R. at 443.) Plaintiff complained of ongoing neck discomfort and interscapular right shoulder discomfort. (R. at 443.) Plaintiff denied having any sensory or motor defects in either of her arms. (R. at 443.) Plaintiff's gait, station, heel-and-toe weightbearing and upper extremity sensory examination were all intact. (R. at 443.) She had full cervical mobility for flexion and limited cervical mobility for extension, sidebend and rotation. (R. at 443.) Plaintiff had full shoulder mobility for abduction, adduction and both internal and external rotation. (R. at 443.) She did

not show a decrease in muscle tone. (R. at 443.) Dr. Martin diagnosed Plaintiff with cervical

spondylosis and cervical radiculitis with no current buttressing sensory or reflex deficits. (R. at

443.) Dr. Martin discussed the treatments available to Plaintiff, including cervical facet joint

injections and cervical radiofrequency neurotomy. (R. at 443.) Further, on a work restriction

form, Dr. Martin indicated that Plaintiff could return to "light work" the next day, July 28, 2010.

(R. at 444.)

On August 2, 2010, Dr. Martin performed a right C5-C7 cervical medial branch nerve

block on Plaintiff. (R. at 440.) On a work status form, Dr. Martin indicated that Plaintiff had

cervical radiculitis, but that she could perform light work and occasionally lift/carry twenty

pounds and frequently lift/carry ten pounds. (R. at 442.)

On August 12, 2010, Plaintiff returned to Dr. Martin for a follow-up visit. (R. at 436.)

Dr. Martin noted that Plaintiff showed less than a fifty percent improvement from the cervical

branch block injections. (R. at 436.) Plaintiff stated that she did not have any associated sensory

or motor deficits in either her upper or lower extremities. (R. at 436.) Her physical findings

remained generally unchanged. (R. at 436.)

On September 14, 2010, Plaintiff went to the MCV Spine Center, where Steven H.

Deschner, M.D. examined her for weakness in her right hand and pain in her lower back, neck

and right arm. (R. at 473-77.) Plaintiff rated her pain as a nine out of ten; however, Dr.

Deschner reported that no overt signs indicated pain of that magnitude. (R. at 475.) Dr.

Deschner noted that Plaintiff presented as cheerful and interactive during the examination. (R. at

475.) Upon palpitation, Plaintiff's back and neck showed no point tenderness. (R. at 475.)

Plaintiff's sense of touch was intact in her neck, back and arms. (R. at 475.) Plaintiff had a

6

limited range of movement in her neck, but a full range of motion in her shoulders, elbows, wrists and fingers. (R. at 475.) Plaintiff's pain did not increase upon movement. (R. at 475.) Plaintiff's muscle strength in her neck rated at a five out of five for flexion, extension and rotation. (R. at 475.) Plaintiff further demonstrated full strength for elevation, adduction, flexion, extension and rotation of her shoulders and for flexion/extension of her elbows, wrists and fingers. (R. at 475.) Plaintiff had reflexes rated at one out of four at her biceps, brachioradialis and triceps. (R. at 475.) Plaintiff's sensation and strength in her legs remained intact, and she demonstrated a strong and balanced gait. (R. at 475-76.) Plaintiff showed no weakness or numbness in her right arm. (R. at 476.) Due to possible neuropathic pain in Plaintiff's right arm, Dr. Deschner ordered an electromyogram/nerve conduction study ("EMG/NCS") and prescribed Plaintiff Gabapentin. (R. at 477.)

During a September 16, 2010 appointment, Mr. Davis reported that Plaintiff tolerated her diabetes medication well, but he noted that Plaintiff failed to regularly check her blood sugar levels. (R. at 488.) During this examination, Plaintiff's HbA1c was 10.0. (R. at 488.) Mr. Davis reported no edema and increased Plaintiff's Metformin dosage. (R. at 488-89.)

On September 23, 2010, Karen Steidle, M.D. noted that Plaintiff's EMG/NCS indicated moderate to severe sensorimotor median neuropathy at Plaintiff's right wrist without definite associated denervation. (R. at 487.) The EMG/NCS also indicated moderate sensorimotor median neuropathy at Plaintiff's left wrist without denervation. (R. at 487.) The EMG/NCS did not show definitive evidence of ulnar neuropathy at Plaintiff's elbow bilaterally or definitive evidence of right cervical radiculopathy. (R. at 487.)

7

On January 17, 2011, Plaintiff went to the emergency room, complaining of shortness of breath and chest pain. (R. at 519, 521.) Plaintiff's left chest was tender upon palpation. (R. at 522.) Plaintiff's physical examination findings were otherwise within normal limits, and Plaintiff demonstrated a normal range of motion in all four extremities. (R. at 522.) The emergency room attendants diagnosed Plaintiff with chest wall pain and discharged her in stable condition. (R. at 526-27.)

On June 10, 2011, Plaintiff returned to Charlotte Primary Care, complaining of right foot pain and swelling that had lasted for two days. (R. at 504.) Mr. Davis diagnosed Plaintiff with cellulitis of her right foot and gave her an antibiotic for treatment. (R. at 504.) On June 11, 2011, Plaintiff returned to Charlotte Primary Care, complaining of continued swelling in her right foot. (R. at 502.) On June 13, 2011, Plaintiff returned to Mr. Davis, complaining of cellulitis and increased swelling in her right ankle. (R. at 501.) Plaintiff's right ankle displayed erythema and was warm to touch. (R. at 501.) Mr. Davis also noted serious drainage from multiple puncture wounds. (R. at 501.) He diagnosed cellulitis and altered Plaintiff's antibiotic medication. (R. at 501.)

On June 17, 2011, Plaintiff went to an emergency room, because of continued swelling in her foot. (R. at 512.) Plaintiff indicated that the swelling began when she scratched her ankle earlier in the week, opening her skin. (R. at 512.) The emergency room attendants reported that Plaintiff's right lower extremity was swollen, and that it had a positive Homan's sign, multiple superficial excoriations, mild calor and mild erythema. (R. at 512.) Otherwise, Plaintiff's physical examination was within normal limits, and Plaintiff demonstrated full motor strength in

8

her major muscle groups and intact sensation. (R. at 512.) The emergency room attendants diagnosed Plaintiff with cellulitis and prescribed Lortab and Bactrim. (R. at 513.)

On August 10, 2011, Mr. Davis wrote to Plaintiff's attorney and stated that Plaintiff had been a patient of Charlotte Primary Care for fifteen years. (R. at 533.) He reported that Plaintiff had developed insulin dependent type II diabetes before age thirty, and that Plaintiff's diabetes-related peripheral neuropathy caused her significant chronic pain. (R. at 533.) Mr. Davis further reported that Plaintiff experienced significant chronic weight gain that resulted in chronic arthralgias, mostly in her back, hips and knees, with secondary edema of her legs. (R. at 533.) These conditions affected Plaintiff's ability to walk, exercise and perform activities of daily living. (R. at 533.) Mr. Davis opined that Plaintiff was unable to walk more than two hundred feet without rest, and that she could not squat, climb or lift anything significant because of her impairments. (R. at 533.) Mr. Davis further opined that the left-sided C5-C6 disc deformity caused the neuropathic problems in Plaintiff's upper extremities. (R. at 533.) These neuropathic problems caused Plaintiff significant disuse of her right arm, such that she was unable to grip or carry anything significant. (R. at 533.)

On August 29, 2011, Mr. Davis again wrote a letter to Plaintiff's attorney. (R. at 534.) Mr. Davis indicated that Plaintiff's diabetes was poorly controlled and that she took a large amount of insulin and oral medication. (R. at 534.) Plaintiff's history of high blood pressure, however, was well-controlled with four medications. (R. at 534.) Mr. Davis opined that Plaintiff's complaints of chronic pain possibly stemmed from peripheral neurpathy, secondary to her diabetes. (R. at 534.) He further reported that Plaintiff ambulated with difficulty due to pain from her obesity and pain in her feet and back. (R. at 534.) Mr. Davis indicated that Plaintiff's

9

ability to lift, carry, bend and climb was undocumented and untested. (R. at 534.) He ultimately advised that Plaintiff would need to seek continued medical attention and alter her lifestyle, through "dramatic weight loss and [an] appropriate exercise regimen," to optimize her health. (R. at 534.)

C. Plaintiff's Testimony

On August 31, 2011, Plaintiff, represented by counsel, testified at a hearing before an ALJ. (R. at 220-38.) Plaintiff testified that she lived with her husband and her nine-year-old son. (R. at 228-29.) On a typical day, she sent her son to school, took her medications at breakfast, laid down or sat with pillows until her son got home. (R. at 230.) She usually laid down for two to three hours at a time. (R. at 229.) Her medications made her tired, and she took a one to two-hour break following every injection of insulin. (R. at 237.) Plaintiff indicated that her feet swelled due to her "out of control" blood sugar. (R. at 229, 232-33.)

Plaintiff testified that she cooked and washed dishes while sitting down. (R. at 230.) She could walk, stand or sit for thirty minutes, after which she needed to lie down. (R. at 231.) Plaintiff testified that she could not bend or squat. (R. at 231.) She could lift ten pounds by using both hands. (R. at 231-32.) Plaintiff rated her pain as five out of ten while she was on medication and as eight out of ten without medication. (R. at 226-27.)

D. Vocational Expert Testimony

On August 31, 2011, a Vocational Expert ("VE") testified at Plaintiff's hearing before an ALJ. (R. at 234-36.) The VE testified that Plaintiff performed medium, semi-skilled work as a nursing assistant and light, unskilled work as a cashier and deli worker. (R. at 235.) The ALJ asked the VE to assume a hypothetical individual with Plaintiff's age, education and work

10

experience, who was limited to light work, occasionally lifting no more than twenty pounds, frequently lifting ten pounds, and standing, walking or sitting for about six hours, occasionally reaching, pushing and pulling. (R. at 235.) The ALJ then asked the VE if such an individual could perform Plaintiff's past relevant work. (R. at 235.) The VE testified that the hypothetical individual could not perform Plaintiff's past relevant work, but could perform other light, unskilled work, such as a counter clerk, an usher/lobby attendant and a parking lot attendant. (R. at 235-36.)

   E.  Non-Treating State Agency Physicians' Opinions

       On August 11, 2010, David C. William, M.D., a state agency consultant, completed a Physical Residual Functional Capacity ("RFC") Assessment. (R. at 358-59.) Dr. Williams opined that Plaintiff was capable of performing light work activity. (R. at 358.) He indicated that Plaintiff could not climb ladders, ropes or scaffolds, but could occasionally climb ramps and stairs, and could occasionally stoop, kneel, crouch and crawl, and frequently balance. (R. at 358-59.) Further, Plaintiff's ability to push and pull was limited in her right upper extremities. (R. at 358.) Dr. Williams also opined that Plaintiff had a limited capacity to reach in front, laterally and overhead with her right arm, but that she had an unlimited ability to handle, finger and feel. (R. at 359.)

       On November 17, 2010, Juan Astruc, M.D., a state agency consultatnt, reviewed Plaintiff's updated medical records. (R. at 379-81.) Dr. Astruc opined that Plaintiff could perform a range of light work and reported the same physical capabilities and limitations found by Dr. Williams in his August 2010 RFC Assessment. (R. at 379-81.)

F.  Evidence Not Available to the ALJ

Additionally, Plaintiff submitted new evidence to the Appeals Council that was not available to the ALJ.  (Pl.'s Mem. at 2; R. at 8-192.)  This evidence is in the form of medical records dated January 5, 2012, through January 23, 2013.  (R. at 8.)  These records document Plaintiff's treatment for diabetes, swelling, edema and other impairments with John A. Holland, Jr., M.D.  (R. at 8-192.)

## II. PROCEDURAL BACKGROUND

Plaintiff filed an application for DIB and SSI on April 19, 2012.  (R. at 198, 298.) Plaintiff alleged disability due to back pain, diabetes and high blood pressure with an alleged onset date of January 25, 2010.  (R. at 243, 254, 299-304, 330, 370.)  The Social Security Administration ("SSA") denied Plaintiff's application initially and later on reconsideration.  (R. at 239-48, 253-58.)  A hearing was held before an ALJ on August 31, 2011, during which Plaintiff and a VE testified.  (R. at 220-38.)  In a written decision dated October 13, 2011, the ALJ denied Plaintiff's claim for benefits.  (R. at 195-219.)  Thereafter, on February 11, 2012, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner subject to review by this Court.  (R. at 1-6.)

## III. Questions Presented

1.  Does Plaintiff's new evidence warrant a remand?

2.  Does substantial evidence support the ALJ's assessment of Plaintiff's credibility?

3.  Does substantial evidence support the ALJ's determination of Plaintiff's Residual Functional Capacity?

4.  Does substantial evidence support the weight assigned to the opinion of Plaintiff's treating family nurse practitioner?

12

## IV. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court is limited to determining whether substantial evidence in the record supports the Commissioner's decision and whether the proper legal standards were applied in evaluating the evidence. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (citing *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)). Substantial evidence is more than a scintilla, less than a preponderance and is the kind of relevant evidence a reasonable mind could accept as adequate to support a conclusion. *Hancock*, 667 F.3d at 472; *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). To determine whether substantial evidence exists, the Court is required to examine the record as a whole, but may not "'undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ].'" *Hancock*, 667 F.3d at 472 (quoting *Johnson*, 434 F.3d at 653). In considering the decision of the Commissioner based on the record as a whole, the Court must "'take into account whatever in the record fairly detracts from its weight.'" *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact — if substantial evidence supports the findings— are conclusive and must be affirmed regardless of whether the reviewing court disagrees with such findings. *Hancock*, 667 F.3d at 477 (citation omitted). If substantial evidence does not support the ALJ's determination or if the ALJ has made an error of law, the Court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A sequential evaluation of a claimant's work and medical history is required to determine if a claimant is eligible for benefits. 20 C.F.R. §§ 416.920, 404.1520; *Mastro v. Apfel*, 270 F.3d

171, 177 (4th Cir. 2000). An ALJ conducts the analysis for the Commissioner and it is that process that a court must examine on appeal to determine whether the correct legal standards were applied and whether substantial evidence supports the resulting decision of the Commissioner.

The first step in the sequence is to determine whether the claimant was working at the time of the application and, if so, whether the work constituted "substantial gainful activity" ("SGA"). 20 C.F.R. §§ 416.920(b), 404.1520(b). If a claimant's work constitutes SGA, the analysis ends and the claimant must be found "not disabled," regardless of any medical condition. *Id.* If the claimant establishes that he did not engage in SGA, the second step of the analysis requires him to prove that he has "a severe impairment . . . or combination of impairments which significantly limit[s] [his] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c), 404.1520(c). To qualify as a severe impairment that entitles one to benefits under the Act, the impairment must cause more than a minimal effect on one's ability to function. 20 C.F.R. § 404.1520(c).

At the third step, if the claimant has an impairment that meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (listing of impairments) and lasts, or is expected to last, for twelve months or result in death, it constitutes a qualifying impairment and the analysis ends. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the impairment does not meet or equal a listed impairment, then the evaluation proceeds to the fourth step in which the ALJ is required to determine whether the claimant can return to his past relevant work based on an assessment of the claimant's RFC and the "physical and mental demands of work [the claimant] has done in the past." 20 C.F.R. §§ 416.920(e), 404.1520(e). If such work can be performed,

14

then benefits will not be awarded. *Id.* The burden of proof remains with the claimant through step four of the analysis, such that he must prove that his limitations preclude him from past relevant work. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Hancock*, 667 F.3d at 472.

However, if the claimant cannot perform his past work, the burden then shifts to the Commissioner at the fifth step to show that, considering the claimant's age, education, work experience and RFC, the claimant is capable of performing other work that is available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f), 404.1520(f); *Hancock*, 667 F.3d at 472-73; *Powers v. Apfel*, 207 F.3d 431, 436 (7th Cir. 2000) (citing *Yuckert*, 482 U.S. at 146 n.5). The Commissioner can carry his burden in the final step with the testimony of a VE. When a VE is called to testify, the ALJ's function is to pose hypothetical questions that accurately represent the claimant's RFC based on all evidence on record and a fair description of all of the claimant's impairments, so that the VE can offer testimony about any jobs existing in the national economy that the claimant can perform. *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). Only when the hypothetical posed represents all of the claimant's substantiated impairments will the testimony of the VE be "relevant or helpful." *Id.* If the ALJ finds that the claimant is not capable of SGA, then the claimant is found to be disabled and is accordingly entitled to benefits. 20 C.F.R. §§ 416.920(f)(1), 404.1520(f)(1).

## V. ANALYSIS

### A. The ALJ's Decision

The ALJ found at step one that Plaintiff had not engaged in SGA since January 25, 2010. (R. at 200.) At step two, the ALJ determined that Plaintiff was severely impaired from diabetes, diabetic neuropathy, hypertension, arthralgias and obesity. (R. at 200.) Although finding at step

15

two that Plaintiff's impairments were severe, at step three, the ALJ determined that none of Plaintiff's impairments met the listing requirements of 20 C.F.R. Part. 404, Subpart P, Appendix 1. (R. at 200.)

Next, the ALJ determined that Plaintiff had the RFC to perform light work with some limitations. (R. at 202.) Specifically, the ALJ found that Plaintiff could not climb ladders, ropes or scaffolds; could occasionally climb ramps and stairs; could occasionally balance, stoop, kneel, crouch and crawl; could occasionally use her right arm to push and pull and to reach in front, laterally and overhead; and could lift twenty pounds occasionally and ten pounds frequently. (R. at 202.) In making this RFC finding, the ALJ considered Plaintiff's testimony, objective medical evidence, opinions from Plaintiff's treating medical sources and opinions of state agency consultants. (R. at 202-13.)

The ALJ then determined at step four of the analysis that Plaintiff could not perform her past relevant work as a nursing assistant, cashier or deli worker. (R. at 214.) At step five, after considering Plaintiff's age, education, work experience and RFC, and after consulting a VE, the ALJ found that occupations existed in significant numbers in the national economy that Plaintiff could perform. (R. at 214-15.) Specifically, the ALJ found that Plaintiff, regardless of her impairments, could work as a counter clerk, an usher or a parking lot attendant. (R. at 215.) Therefore, the ALJ concluded that Plaintiff was not disabled and that she was not entitled to benefits. (R. at 215.)

Plaintiff argues that the ALJ improperly assessed Plaintiff's credibility and erred in determining that Plaintiff maintained the ability to perform limited light work. (Pl.'s Mem. at 17, 22.) Plaintiff further argues that the ALJ improperly discounted the opinion of Plaintiff's

16

treating family nurse practitioner. (Pl.'s Mem. at 26.)  Finally, Plaintiff offers new evidence,

unavailable to the ALJ, to support her arguments. (Pl.'s Mem. at 2.)  Defendant argues that

substantial evidence supports the ALJ's assessment of Plaintiff's credibility and RFC

determination. (Def.'s Mem. at 16, 20.)  Defendant further argues that the ALJ properly afforded

less than controlling weight to Plaintiff's treating family nurse practitioner's opinion. (Def.'s

Mem. at 26.)

B.  Plaintiff's new evidence does not warrant a remand.

Plaintiff submitted new evidence, unavailable to the ALJ, to the Appeals Council and to

this Court. (Pl.'s Mem. at 2.)  This evidence is in the form of medical records, dated January 5,

2012, through January 23, 2013, that document Plaintiff's treatment for diabetes, swelling,

edema and other impairments with Dr. John A. Holland, Jr. (R. at 8-192.)  While Plaintiff has

not argued that this Court should consider this evidence or that the Appeals Council should have

reversed the ALJ's opinion in light of the new evidence, Plaintiff uses this evidence in arguing

against the ALJ's RFC determination.  Therefore, the Court will discuss whether the new

evidence warrants a remand.

In determining whether the ALJ's decision was supported by substantial evidence, a

district court may not consider evidence that was not presented to the ALJ. *Smith v. Chater*,

99 F.3d 635, 638 n.5 (4th Cir. 1996) (citing *United States v. Carlo Bianchi & Co.*, 373 U.S. 709,

714-15 (1963)); *Huckabee v. Richardson*, 468 F.2d 1380, 1381 (4th Cir. 1972) (citing *Vitek v.*

*Finch*, 438 F.2d 1157 (4th Cir. 1970)) (noting that reviewing courts are restricted to the

administrative record in determining whether the decision is supported by substantial evidence).

Although the Court may not consider evidence that was not presented to the ALJ, the Act

provides that the Court may remand a case for reconsideration in two situations. 42 U.S.C.

§ 405(g). The first is a "sentence four" remand, which provides that the "court shall have power

to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or

reversing the decision of the Commissioner of Social Security with or without remanding the

cause for a rehearing. *Id.* The second is a "sentence six" remand, which provides that the court

"may at any time order additional evidence to be taken before the Commissioner of Social

Security, but only upon a showing that there is new evidence which is material and that there is

good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Id.*

A reviewing court may remand a case on the basis of newly discovered evidence if four

prerequisites are met: (1) the evidence must be relevant to the determination of disability at the

time that the application was first filed and not be merely cumulative; (2) the evidence must be

material; (3) there must be good cause for failure to submit the evidence before the

Commissioner; and (4) the claimant must present to the remanding court a general showing of

the nature of the new evidence. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985). Because

Plaintiff has offered new evidence to the Court, the Court will address whether Plaintiff has

fulfilled the requirements to justify a sentence six remand.

Plaintiff meets the third and fourth requirements of *Borders* standard for a sentence six

remand. *Borders*, 777 F.2d at 955. There is good cause for Plaintiff's failure to submit the

evidence earlier simply because the report was completed after the ALJ's decision. Plaintiff has

also made a general showing of the nature of the new evidence, as she has entered it into the

record and discussed it in her motion.

However, the new evidence does not warrant a section six remand, because it is

18

irrelevant. New evidence must relate to the determination of disability *at the time the application was first filed*, and it must not concern evidence of a later-acquired disability, or of the "subsequent deterioration of the previously non-disabling condition." *Szubak v. Sec'y of Health & Human Servs.*, 745 F.2d 831, 833 (3d Cir. 1984) (citing *Ward v. Schweiker*, 686 F.2d 762, 765 (9th Cir. 1982)). In other words, the test requires that for new evidence to be relevant, it must "relate[] to the period on or before the date of the ALJ's decision." *Wilkins v. Sec'y of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991) *(en banc)* (quoting *Williams v. Sullivan*, 905 F.2d 214, 216 (8th Cir. 1990)).

Plaintiff filed her application for DIB and SSI on April 19, 2010, alleging an onset date of January 25, 2010. (R. at 298-99.) The ALJ issued his decision on October 13, 2011. (R. at 215.) The new evidence offered by Plaintiff dates from January 2012 through January 2013. (R. at 8-192.) Therefore, the new evidence falls outside of the period on or before the date of the ALJ's decision, and is thus irrelevant. Because this new evidence is irrelevant, it fails to meet the requirements of a sentence six remand.

C. Substantial evidence supports the ALJ's assessment of Plaintiff's credibility.

Plaintiff argues that the ALJ incorrectly discredited Plaintiff's subjective testimony regarding her conditions. (Pl.'s Mem. at 17.) Defendant maintains that substantial evidence supports the ALJ's credibility finding. (Def.'s Mem. at 16.)

After step three of the ALJ's sequential analysis, but before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine the claimant's RFC. 20 C.F.R. §§ 416.920(e)-(f), 416.945(a)(1). The RFC must incorporate impairments supported by the objective medical evidence in the record and those impairments that are based on the claimant's credible complaints. In evaluating a claimant's subjective symptoms, the ALJ must

19

follow a two-step analysis. *Craig*, 76 F.3d 585, 594 (4th Cir. 1996); *see also* SSR 96-7p; 20 C.F.R. §§ 404.1529(a) and 416.929(a). The first step is to determine whether there is an underlying medically determinable physical or mental impairment or impairments that reasonably could produce the individual's pain or other related symptoms. *Craig*, 76 F.3d at 594; SSR 96-7p, at 1-3. The ALJ must consider all of the medical evidence in the record. *Craig*, 76 F.3d at 594-95; SSR 96-7p, at 5, n.3; *see also* SSR 96-8p, at 13 (specifically stating that the "RFC assessment must be based on all of the relevant evidence in the case record"). If the underlying impairment reasonably could be expected to produce the individual's pain, then the second part of the analysis requires the ALJ to evaluate a claimant's statements about the intensity and persistence of the pain and the extent to which it affects the individual's ability to work. *Craig*, 76 F.3d at 595. The ALJ's evaluation must take into account "all the available evidence," including a credibility finding of the claimant's statements regarding the extent of the symptoms and the ALJ must provide specific reasons for the weight given to the individual's statements. *Id.* at 595-96; SSR 96-7p, at 5-6, 11.

This Court must give great deference to the ALJ's credibility determinations. *Eldeco, Inc. v. NLRB*, 132 F.3d 1007, 1011 (4th Cir. 1997). The Fourth Circuit has determined that "[w]hen factual findings rest upon credibility determinations, they should be accepted by the reviewing court absent 'exceptional circumstances.'" *Id.* (quoting *NLRB v. Air Prods. & Chems., Inc.*, 717 F.2d 141, 145 (4th Cir. 1983)). Therefore, this Court must accept the ALJ's factual findings and credibility determinations unless "'a credibility determination is unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all.'" *Id.* (quoting *NLRB v. McCullough Envtl. Servs., Inc.*, 5 F.3d 923, 928 (5th Cir. 1993)).

Furthermore, it is well established that Plaintiff's subjective allegations of pain are not, alone, conclusive evidence that Plaintiff is disabled. *Mickles v. Shalala*, 29 F.3d 918, 919 (4th Cir. 1994). The Fourth Circuit has determined that "subjective claims of pain must be supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." *Craig*, 76 F.3d at 591.

At step three, the ALJ determined that Plaintiff's underlying medical impairments could reasonably be expected to produce her alleged symptoms. (R. at 203.) However, the ALJ found that Plaintiff's statements concerning the intensity, persistence and limiting effects of her condition were not fully credible to the extent that they were inconsistent with Plaintiff's RFC. (R. at 203.) Plaintiff argues that the ALJ improperly rejected her credibility. (Pl.'s Mem. at 16-22.) However, as long as substantial evidence in the record supported the conclusion, this Court must give great deference to the ALJ's credibility determinations. *Eldeco*, 132 F.3d at 1011. In reaching his decision, the ALJ reasonably compared objective evidence of record to Plaintiff's statements and determined that Plaintiff's statements concerning the intensity and limiting effects of her symptoms were not consistent with that evidence. (R. at 203.) Substantial evidence supports the ALJ's determination.

The ALJ noted that Plaintiff received extensive treatment for her pain; however, physical examinations and Plaintiff's conservative course of treatment did not support Plaintiff's constant complaints of pain. (R. at 211.) Despite Plaintiff's complaints of lower back pain, a December 23, 2009, x-ray of Plaintiff's lumbar spine revealed only mild degenerative disc disease with no evidence of instability, vertebral body collapse or significant disc space narrowing. (R. at 415.) Plaintiff's February 15, 2010, lumbar MRI was negative and revealed no evidence of stenosis,

nerve root sleeve impingement or disc protrusion. (R. at 421.) A February 15, 2010, cervical MRI demonstrated a left lateral disc protrusion; however, Plaintiff's physicians indicated that Plaintiff's complaints of pain on her right side did not correlate to the objective findings in the MRI. (R. at 420.) A May 25, 2010, physical examination demonstrated no obvious distress. (R. at 454-55.) A Spurling's test recreated Plaintiff's pariscapular pain but was unable to recreate her radicular right arm pain. (R. at 454-55.) Dr. Kim assessed a left lateral disc herniation, but noted that Plaintiff's pain was on her right side. (R. at 454-55.) Moreover, despite Plaintiff's complaints of pain on her right side, Dr. Deschner's examination of Plaintiff in September 2010 revealed neither weakness nor numbness in Plaintiff's right arm. (R. at 476.) Dr. Deschner further opined that no objective signs suggested that Plaintiff experienced pain at the high magnitude of which she complained. (R. at 475.)

Moreover, evidence of Plaintiff's medications and course of treatment support the ALJ's determination. 20 C.F.R. § 416.929(c)(3)(iv)-(v). Plaintiff received an epidural steroid injection, but it did not provide Plaintiff much relief. (R. at 445, 450.) Furthermore, Dr. Kim reported that Plaintiff was a poor candidate for surgical relief. (R. at 445.) Dr. Kim instead suggested additional physical therapy to Plaintiff, but Plaintiff declined this treatment. (R. at 445.) In July 2010, Dr. Martin also suggested additional physical therapy for Plaintiff, which she declined, stating that physical therapy worsened her neck and shoulder pain. (R. at 443.) In March 2010, however, Plaintiff told Dr. Ayres that physical therapy was helping to alleviate her pain. (R. at 464.) Moreover, Mr. Davis stated that, in addition to seeking medical attention, Plaintiff would need to alter her lifestyle through dramatic weight loss and exercise to optimize her health. (R. at 534.) Substantial evidence, therefore, supports the ALJ's credibility assessment.

22

D. Substantial evidence supports the ALJ's determination of Plaintiff's Residual Functional Capacity.

Plaintiff argues that the ALJ's RFC determination was flawed, because it did not account for all of Plaintiff's impairments. (Pl.'s Mem. at 22-26.) Specifically, Plaintiff argues that the ALJ's RFC determination was incomplete, because it did not consider the limitations to Plaintiff's right upper extremity caused by the C5-C6 protrusion, Plaintiff's obesity, the side effects of Plaintiff's medication and the limitations resulting from swelling and edema in Plaintiff's legs. (Pl.'s Mem. at 22-26.) Defendant maintains that substantial evidence supports the ALJ's RFC determination. (Def.'s Mem. at 20-25.)

After step three of the ALJ's sequential analysis, but before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine the claimant's RFC. 20 C.F.R. §§ 416.920(e)-(f), 416.945(a)(1). When making an RFC determination, the ALJ must incorporate impairments supported by the objective medical evidence in the record and those impairments that are based on the claimant's credible complaints. Moreover, the ALJ must consider all of the medical evidence in the record. *Craig*, 76 F.3d at 594-95; SSR 96-7p, at 5, n.3; *see also* SSR 96-8p, at 13 (specifically stating that the "RFC assessment must be based on *all* of the relevant evidence in the case record") (emphasis added).

When determining Plaintiff's RFC, the ALJ extensively considered all of the evidence regarding Plaintiff's symptoms in compliance with the rulings and regulations. (R. at 202-13.) Specifically, the ALJ properly considered the limitations to Plaintiff's right upper extremity caused by the C5-C6 protrusion, Plaintiff's obesity, the side effects of Plaintiff's medication and the limitations resulting from swelling and edema in Plaintiff's legs. (R. at 202-13.) Substantial evidence supports the ALJ's determinations.

23

      i.      Limitations to Plaintiff's Right Upper Extremity

Plaintiff argues that the ALJ's RFC determination was flawed, because he did not consider the limitations to Plaintiff's right upper extremity caused by a herniated disc at C5-C6. (Pl.'s Mem. at 24.) Contrary to Plaintiff's assertion, the ALJ did consider alleged limitations to Plaintiff's right upper extremity. (R. at 212.) Indeed, the ALJ discussed the left lateral disc protrusion at C5-C6 that slightly deformed Plaintiff's spinal cord and narrowed Plaintiff's left intervertebral foramen. (R. at 212.) However, Dr. Kim and the MRI radiologist both stated that this left-sided disc protrusion did not correspond with Plaintiff's right arm pain. (R. at 420, 454-55.) Further, Dr. Deschner reported that Plaintiff displayed neither weakness nor numbness in her right arm upon examination. (R. at 476.) Upon examination, Plaintiff also demonstrated a full range of motion in her shoulders, elbows, wrists and fingers, as well as full strength for elevation, abduction, adduction, flexion, extension and rotation of her shoulders. (R. at 475.)

Moreover, contrary to Plaintiff's assertion, the ALJ did consider the short-term work restriction forms completed by Dr. Ayres and Dr. Kim. (R. at 213.) None of these forms, however, indicated that Plaintiff was restricted in the use of her right upper extremity. (R. at 456, 461, 463, 465-66, 468-70, 472.) The ALJ also properly relied on the work status forms completed by Dr. Martin. (R. at 213, 442, 444.) Dr. Martin reported no limitation on Plaintiff's ability to push, pull, grasp or reach overhead. (R. at 442, 444.) Further, Dr. Martin did not assess any limitations to Plaintiff's right upper extremity. (R. at 442, 444.)

Additionally, the ALJ did not "completely disregard" limitations assessed by the state agency consultants, Dr. Williams and Dr. Astruc. (R. at 207-08, 210.) Dr. Williams and Dr. Astruc opined only that Plaintiff was limited in her ability to push, pull or reach in front, laterally or overhead with her right arm. (R. at 358-59, 380.) The ALJ specifically accounted for this

limitation by restricting Plaintiff to no more than occasional reaching, pushing and pulling in front, laterally or overhead with her right arm. (R. at 202.) Substantial evidence, therefore, supports the ALJ's determination.

      ii.    Plaintiff's Obesity

Plaintiff argues that the ALJ erred by failing to consider Plaintiff's obesity when assessing her RFC. (Pl.'s Mem. at 24.) Contrary to Plaintiff's assertion, the ALJ properly considered evidence of Plaintiff's obesity in making his RFC determination. (R. at 200-01, 203-04.) The ALJ first found that Plaintiff's obesity was a severe impairment. (R. at 200.) The ALJ then discussed Plaintiff's obesity in conjunction with assessing her RFC. (R. at 203-04, 206, 208, 211.) Specifically, the ALJ discussed Plaintiff's testimony as to her weight, examinations that revealed Plaintiff to be obese and Mr. Davis' letters that mentioned Plaintiff's obesity. (R. at 203-04, 206, 208, 211.) While the evidence of record mentions Plaintiff's obesity, it does not indicate that Plaintiff's obesity caused her significant limitations apart from those caused by her other impairments. The ALJ is required to consider the effects of Plaintiff's obesity combined with her other impairments; however, the ALJ must "not make assumptions about the severity or functional effects of obesity combined with other impairments." SSR 02-1p.

Here, the ALJ properly considered Plaintiff's obesity in conjunction with her other impairments. Given the lack of evidence suggesting that Plaintiff's obesity resulted in distinct limitations not already considered by the ALJ in assessing Plaintiff's RFC, the ALJ properly adhered to the regulations and did not make assumptions regarding the severity of Plaintiff's obesity.

iii.   Side Effects of Plaintiff's Medication

Plaintiff argues that the ALJ should have considered the drowsiness brought on by Plaintiff's medications in making his RFC finding. (Pl.'s Mem. at 24-45.) Drowsiness will generally not be considered disabling unless the record indicates that it results in serious functional limitations. *Johnson v. Barnhart*, 434 F.3d 650, 658 (4th Cir. 2005) (quoting *Burns v. Barnhart*, 312 F.3d 113, 131 (3d Cir. 2002)).

Plaintiff testified that her medication made her sleepy. (R. at 236-37.) A review of the record, however, reveals no evidence of such drowsiness causing Plaintiff any significant functional limitations. While Dr. Deschner did inform Plaintiff that a common side effect of Gabapentin was sleepiness, he did not indicate that Plaintiff was significantly impaired by that side effect. (R. at 477.) As Plaintiff's physicians did not indicate that the drowsiness brought on by Plaintiff's medication would cause significant functional limitations, the ALJ reasonably did not include limitations due to Plaintiff's drowsiness in his RFC. "Drowsiness often accompanies the taking of medication, and it should not be viewed as disabling unless the record references serious functional limitations." *Johnson*, 434 F.3d at 658 (quoting *Burns*, 312 F.3d at 131) (internal quotations omitted).

iv.   Swelling and Edema in Plaintiff's Legs

Plaintiff argues that the ALJ failed to include the limitations caused by Plaintiff's leg swelling and edema. (Pl.'s Mem. at 25-26.) Plaintiff cites medical records from Charlotte Primary Care and new evidence of swelling and edema that was presented to the Appeals Council, but that was unavailable to the ALJ. (Pl.'s Mem. at 25-26.) Defendant argues that Plaintiff's swelling and edema were not consistent symptoms during the relevant period—the

alleged onset date of January 25, 2010, through the ALJ's decision on October 13, 2011. (Def.'s Mem. at 25.)

During the relevant period, swelling and edema in Plaintiff's feet were not consistently reported. Hospital records from January 17, 2011, and June 17, 2011, indicate edema. (R. at 511, 520.) During the relevant period, the only clinical findings of swelling in Plaintiff's feet were recorded in June 2011. (R. at 501-05, 512.) At other clinical examinations from January 25, 2010, through October 13, 2011, no findings of swelling or edema were reported. (R. at 424, 426, 475-76, 488-89.)

Moreover, the state agency physicians did not indicate any limitations due to swelling or edema. (R. at 358-59, 379-81.) Further, Plaintiff indicated that she was able to take care of her eight-year-old son, perform some laundry, prepare breakfast and shop for food. (R. at 346-49.) Considering the state agency physicians' opinions, Plaintiff's activities of daily living and the limited clinical findings of edema or swelling during the relevant period, the ALJ did not err in determining Plaintiff's RFC, and substantial evidence supports the ALJ's finding.

Plaintiff relies on evidence from Dr. Holland, dated January 2012 to January 2013, in support of her argument that the ALJ should have considered limitations due to swelling and edema. (Pl.'s Mem. at 26.) However, as discussed above, this evidence lacks relevance as it did not relate to the determination of Plaintiff's disability at the time that her application was filed. *Wilkins*, 953 F.2d at 96. Rather, the evidence tended to demonstrate new conditions or subsequent deterioration of previous, non-disabling conditions. *See Szubak*, 745 F.2d at 833 (noting that implicit in the materiality requirement is the requirement that new evidence not merely demonstrate "a later-acquired disability or . . . the subsequent deterioration of the previously non-disabling condition"). Plaintiff's new evidence, therefore, did not relate to

27

Plaintiff's disability during the relevant period of January 25, 2010, the alleged onset date, through October 13, 2011, the date of the ALJ's decision. Because substantial evidence during the relevant period supports the ALJ's determination, he did not err by not including alleged limitations due to swelling and edema in Plaintiff's legs.

E. Substantial evidence supports the weight assigned to the opinion of Plaintiff's treating family nurse practitioner.

Plaintiff argues that "[i]t was irrational and reversible error for the ALJ to discount the opinion of the treating physician, FNP Joseph Davis." (Pl.'s Mem at 26.) Defendant argues that substantial evidence supports the ALJ's assignment of weight. (Def.'s Mem. at 26-27.)

During the sequential analysis, when the ALJ determines whether the claimant has a medically determinable severe impairment, or combination of impairments which would significantly limit the claimant's physical or mental ability to do basic work activities, the ALJ must analyze the claimant's medical records that are provided and any medical evidence resulting from consultative examinations or medical expert evaluations that have been ordered. *See* 20 C.F.R. § 416.912(f). When the record contains a number of different medical opinions, including those from Plaintiff's treating sources, consultative examiners or other sources that are consistent with each other, then the ALJ makes a determination based on that evidence. *See* 20 C.F.R. § 416.927(c)(2). If, however, the medical opinions are inconsistent internally with each other, or other evidence, the ALJ must evaluate the opinions and assign them respective weight to properly analyze the evidence involved. 20 C.F.R. § 416.927(c)(2), (d).

Under the applicable regulations and case law, the opinions of both treating physicians and "other medical sources," such as treating nurse practitioners, are weighed using the factors in 20 C.F.R. § 404.1527. *See* SSR 06-3p. Moreover, a treating *physician's* opinion must be given controlling weight if it is well-supported by medically acceptable clinical and laboratory

28

diagnostic techniques and is not inconsistent with other substantial evidence in the record. *Craig*, 76 F.3d at 590; 20 C.F.R. § 416.927(d)(2); SSR 96-2p. However, the regulations do not require that the ALJ accept opinions from a treating source in every situation, *e.g.*, when the individual opines on the issue of whether the claimant is disabled for purposes of employment (an issue reserved for the Commissioner), or when the source's opinion is inconsistent with other evidence, or when it is not otherwise well supported. 20 C.F.R. §§ 404.1527(d)(3)-(4), (e).

The ALJ is required to consider the following when evaluating a treating source's opinions: (1) the length of the treating source's relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) supportability based upon the medical record; (4) consistency between the opinion and the medical record; (5) any specialization on the part of the treating source; and (6) any other relevant factors. 20 C.F.R. §§ 404.1527(d)(2)-(6); SSR 06-3p. However, those same regulations specifically vest the ALJ — not the treating sources — with the authority to determine whether a claimant is disabled as that term is defined by statute. 20 C.F.R. § 404.1527(e)(1).

Here, because the record contained multiple medical opinions, the ALJ was forced to reconcile Mr. Davis' opinion and the medical evidence. Ultimately, the ALJ apparently gave no weight to Mr. Davis' opinion, because Mr. Davis later suggested that he could not offer a complete assessment regarding Plaintiff's retained abilities without performing a functional capacity evaluation. (R. at 213, 534.) Substantial evidence supports the ALJ's decision.

The ALJ did in fact consider Mr. Davis' August 10, 2011, letter in which he opined that Plaintiff's impairments, including diabetes and edema, rendered Plaintiff unable to walk further than two hundred feet, squat, climb or lift anything significant. (R. at 213, 533.) However, as discussed above, the ALJ extensively considered evidence of all Plaintiff's alleged impairments

during the relevant period. (R. at 202-13.) With the exception of findings in January 2011 and June 2011, other clinical examinations during the relevant period revealed no findings of swelling or edema. (R. at 424, 426, 475-76, 488-89, 501-05, 511-12, 520.) Moreover, the ALJ considered the opinions of the state agency consultants and gave significant weight to the opinion of Dr. Martin, Plaintiff's treating physician. (R. at 213.) Dr. Williams noted that the objective evidence indicated that Plaintiff's diabetes was controlled with medication. (R. at 361.) None of this evidence supported Mr. Davis' opinion that Plaintiff had significant functional limitations. The ALJ also noted that Mr. Davis later stated that Plaintiff's functional capabilities were undocumented and untested, and that a functional capacity evaluation would be necessary to determine the extent to which Plaintiff could lift, carry, bend or climb. (R. at 213, 534.)

Further, evaluations of Plaintiff's MRI revealed no correlation between her alleged right arm pain and her C5-C6 protrusion. (R. at 420, 454-55.) Moreover, as discussed above, no evidence suggested that Plaintiff's obesity caused her distinct limitations. Furthermore, Dr. Martin, Plaintiff's treating physician, reported no limitation on Plaintiff's ability to push, pull, grasp or reach overhead. (R. at 442, 444.) Additionally, Dr. Martin did not find that Plaintiff suffered significant limitations, but rather he endorsed her for light work. (R. at 442, 444.) Substantial evidence, therefore, supports the ALJ's decision to give no weight to Mr. Davis' assessment.

## VI. CONCLUSION

Based on the foregoing analysis, it is the recommendation of this Court that Plaintiff's Motion for Summary Judgment (ECF No. 14) be DENIED, that Plaintiff's Motion to Remand (ECF No. 15) be DENIED, that Defendant's Motion for Summary Judgment (ECF No. 17) be

GRANTED and that the final decision of the Commissioner be AFFIRMED.

Let the Clerk forward a copy of this Report and Recommendation to the Honorable

Henry E. Hudson, to all counsel of record, and to Plaintiff at her address of record.

### NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and**

**recommendations of the Magistrate Judge contained in the foregoing report within**

**fourteen (14) days after being served with a copy of this report may result in the waiver of**

**any right to a _de novo_ review of the determinations contained in the report and such failure**

**shall bar you from attacking on appeal the findings and conclusions accepted and adopted**

**by the District Judge except upon grounds of plain error.**

/s/

David J. Novak
United States Magistrate Judge

Date: March 4, 2014
Richmond, Virginia

31